AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
JUN 3 2019
MITCHELL R. ELFERS
CLERK

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

2221 Don Felipe Road SW,
Albuquerque, New Mexico

Case No. 19-MR-644

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, attached hereto and incorporated herein by reference.

located in the _____ District of ___New Mexico___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(x)(2), 924(c) and 21 U.S.C. §§ 841(a)(1), 843(b) and 846. | Juvenile Possession Handgun, Use of a Firearm in Furtherance of a Drug Trafficking Crime, Possession of Fentanyl w/ Intent to Distribute, Use of a Communication Facility to Facilitate a Drug Crime & Conspiracy to Distribute. |

The application is based on these facts:
Refer to the attached 12-page Affidavit in Support of Search Warrant by FBI Special Agent Bryan Acee.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Bryan Acee, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 06/03/2019

*Judge's signature*

City and state: Albuquerque, New Mexico

LAURA FASHING, UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

## INTRODUCTION AND AGENT BACKGROUND

1. I, Bryan Acee, Special Agent of the Federal Bureau of Investigation, being first duly sworn, make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises located at **2221 Don Felipe Road SW, Albuquerque, New Mexico** (the "Subject Premises"). Photographs and a more detailed description of the Subject Premises are contained within Attachment A, which has been attached hereto and incorporated herein by reference.

### Purpose of the Affidavit

2. This affidavit seeks a search warrant to allow the Federal Bureau of Investigation ("FBI") to search the Subject Premises for evidence pertaining to violations of:

   a. 18 U.S.C. § 922(x)(2) Being a Juvenile in Possession of a Handgun,

   b. 18 U.S.C. § 924(c) Use of a Firearm in Furtherance of a Drug Trafficking Crime,

   c. 21 U.S.C. § 841(a)(1) Possession of Fentanyl with Intent to Distribute,

   d. 21 U.S.C. § 843(b) Use of a Communication Facility to Facilitate a Drug Crime,

   e. 21 U.S.C. § 846 Conspiracy to Distribute Fentanyl.

3. The information contained in this affidavit is based on my personal knowledge as the case agent in this matter, as well as information provided by other law enforcement officers; statements from confidential human sources; consensual monitoring of person-to-person meetings; my review of photos, videos and messages posted on pertinent social media accounts; observations obtained from surveillance agents; and my training and experience as a law enforcement officer. This affidavit is being submitted for the limited purpose of establishing probable cause; therefore, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish the

1

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

necessary foundation to support the requested search warrant.

## Affiant's Expertise in Drug Investigations

4. I have been a sworn law enforcement officer for 19 years, serving as a police officer, detective, and FBI Special Agent. I have been with the FBI since 2009 and am currently assigned to the FBI Albuquerque Field Office, Violent Crime Task Force (VCTF),[1] where I primarily investigate violent repeat offenders and federal drug and firearm related crimes. Prior to my assignment to the VCTF, I served on the FBI Safe Streets Gang Task Force in Albuquerque, New Mexico, and the FBI/Drug Enforcement Administration Hybrid Cross Border Drug Violence Squad in Las Cruces, New Mexico. I was the lead case agent in the government's 2010-2014 Continuing Criminal Enterprise Drug Kingpin Act case against the Juarez Cartel, which resulted in extensive seizures of drugs, currency, firearms, and the indictment of multiple cartel leaders and members. I also served as the lead case agent in the government's 2015-2019 Racketeer Influenced and Corrupt Organizations (RICO) Act case against the New Mexico Syndicate (SNM) prison gang, which involved several drug-related homicides and substantial drug trafficking activities.

5. Over the past 19 years, I have arrested several hundred persons for offenses related to drug distribution, gang crimes, racketeering offences, firearm violations, homicide, armed robbery, carjacking, assault, and other crimes. My investigative experience includes, conducting surveillance; interviewing subjects, targets, and witnesses; writing affidavits for and executing search and arrest warrants; acting in an undercover capacity; supervising cooperating sources; managing undercover agents; issuing subpoenas; and analyzing phone records, financial

---

[1] The VCTF is an FBI-sponsored task force comprised of investigators from the FBI, New Mexico State Police and Albuquerque Police Department. The VCTF primarily focuses on violent repeat offenders engaged in federal violent, firearm, or drug related crimes.

records, telephone tolls, and Title III wiretap investigations. Through my training and experience, I am familiar with the methods and means used by individuals, drug trafficking organizations, and gang/criminal enterprises to purchase, transport, store, and distribute controlled substances. I am also familiar with how those individuals and organizations hide the often substantial profits generated from their criminal activities. I have qualified, in federal and state courts, as an expert witness on drug trafficking and possession of drugs with intent to distribute. I have qualified in federal court as an expert witness on the Juarez Cartel.

6. I have received hundreds of hours of formal training in the area of gang, drug, and organized crime investigations. I have served as an adjunct professor, law enforcement instructor, and presenter on drug and gang investigations at the California Highway Patrol, Los Angeles Police Department, New Mexico State Police, and Bernalillo County Sheriff's Office academies, as well as at training classes and seminars for the Organized Crime Drug Enforcement Task Force, California Narcotic Officers Association, California Gang Investigators Association, Southern California Outlaw Motorcycle Gang Investigators Association, International Outlaw Motorcycle Gang Investigators Association, New Mexico Gang Task Force, New Mexico State University and the University of New Mexico.

7. Based upon my training, experience, and participation in gang/criminal enterprises and drug trafficking organizations (DTO) investigations, I am aware individuals engaged in drug distribution maintain documents, letters, and records relating to their distribution activities. This documentary evidence is usually secreted in their place of residence, or the residences of family members, friends or associates, in their business locations, or in stash houses. This documentary evidence may include telephone numbers, telephone books, address books, travel receipts, records in fictitious or coded names, false identification, money order receipts, money orders,

money remittance receipts, pre-paid money cards such as MoneyPak, Green Dot, or other debit cards, bulk United States currency, and money collection logs, such as "tally" sheets, drug load sheets, or shipping/mailing receipts.

8. I know that members and associates of DTOs have access to, and often utilize, numerous cellular phones, often at the same time in an effort to avoid law enforcement monitoring. I have observed persons involved in drug trafficking use messaging applications and pre-paid phones requiring no subscriber information, and even use fictitious names, or the names of others, to register the cellular phones used to advance their unlawful activities. These cellular telephones often contain names and phone numbers of other co-conspirators, text messages utilized to further illicit activities, photographs and videos of controlled substances, drug proceeds, and/or firearms. In addition, I am also familiar with the use of text messaging and instant messaging applications used by gang/criminal enterprises and DTOs to advance their unlawful activities. I am aware such messaging applications and services can be utilized from computers and certain computer applications can send messages that appear to be cellular telephone text messages.

9. I know that firearms are tools of the trade and instrumentalities of the crime of drug trafficking, particularly in instances involving subjects who have committed prior violent crimes and/or firearms violations. It has been my experience that persons who illegally possess firearms do not regularly dispose of them.

10. I know individuals involved in the distribution of controlled substances often conceal evidence of their drug trafficking activities in their residences and businesses, or the residences of friends or relatives, and in surrounding areas to which they have ready access such as garages, carports and outbuildings. They also conceal evidence in vehicles, including vehicles

outside of their residences, so that they have ready access to it and so that they can hide it from law enforcement, including law enforcement officers executing search warrants at their residences or businesses. I have also observed individuals involved in drug trafficking bury evidence underground in various containers on their property. This evidence, which is discussed in detail in the following paragraphs, includes records and evidence of drug transactions, proceeds from drug sales, including United States Currency and other financial instruments, and other valuables obtained from proceeds and records of racketeering activity.

11.  I am aware that members of DTOs often maintain records of their transactions in a manner similar to the record keeping procedures of legitimate businesses. Even after the drugs are sold, documentary records are often maintained for long periods of time, even years, to memorialize past transactions, especially when debts remain open; the status of accounts receivable and accounts payable; the names and phone numbers of suppliers, customers, co-conspirators, and other associates who may assist drug traffickers in other ways, such as helping with the cleansing of otherwise "dirty" money (U.S. Currency derived from drug trafficking), through a variety of means, including investments into legitimate enterprises and structuring deposits of large amounts of U.S. Currency into financial institutions in such a way so as to avoid the detection of law enforcement, and any reporting requirements of banking institutions. These records can be maintained on cellular telephones, computers[2] and/or on paper, in the form of business and personal ledgers and diaries, calendars, memoranda, pay-owe sheets (drug ledgers), I owe you notes, miscellaneous notes, money orders, customer lists, and phone address books. I have personally been involved in search warrants which resulted in the discovery of such records that were more than one year old.

---

[2] The term computer includes all types of computers, including desktop computers, notebook or laptop computers, tablets, personal digital assistant, computer server or network hardware.

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

12. It has been my experience that individuals involved in drug distribution possess items of identification, including but not limited to driver's licenses, rent receipts, bills, and address books. These items are relevant to the identity of the defendant(s), possessor of the items seized, and occupants of the premises searched.

13. Lastly, it has been my experience the items I've described herein are often stored by members of DTOs in their businesses, residences, vehicles, and surrounding garages, outbuildings, and yards, on their persons, and in the residences of friends or relatives.

## FACTS AND CIRCUMSTANCES ESTABLISHING PROBABLE CAUSE

14. In early May 2019, an FBI Confidential Human Source (CHS),[3] who historically reported on national security related matters, contacted the FBI and reported the person utilizing Snapchat[4] user name "Yunng_Finesse" was posting photos and videos on Snapchat of multiple assault weapons and large quantities of fentanyl-laced[5] pills, or tablets, for sale. The CHS

---

[3] The CHS may best be described as a citizen informant, who retains social and technical liaisons which have advanced FBI national security investigations. The CHS has served as an FBI informant for the past year and does not have any criminal convictions, nor am I aware of the CHS being the target of any federal or state investigations. In terms of CHS incentive, I am aware the CHS has never been paid by the FBI and believe the CHS is motivated to aid the government based on ideology, respect for the law and a desire to rid the community of dangerous and illicit opioids. I consider the CHS to be reliable, because information provided by the CHS has been corroborated by independent source information, other law enforcement investigations, controlled drug buys, and physical and electronic surveillance. To my knowledge, information provided by the CHS has not been found to be false or misleading

[4] Snapchat is a mobile messaging application that may only be accessed via mobile phones. Snapchat is used to share photos, videos, text, and drawings. It's free to download the app and free to send messages using it. It has become hugely popular in a very short space of time, especially with young people. There is one feature that makes Snapchat different from other forms of texting and photo sharing: the content disappears from the recipient's phone after a few seconds. Source: https://www.webwise.ie/parents/explainer-what-is-snapchat-2/

[5] Fentanyl is a synthetic opioid that is 80-100 times stronger than morphine. Pharmaceutical fentanyl was developed for pain management treatment of cancer patients. Because of its powerful opioid properties, Fentanyl is also diverted for abuse. Fentanyl is added to heroin to increase its potency, or be disguised as highly potent heroin. Many users believe that they are

indicated "Yunng_Finesse" was active in shared Snapchat group posts with the CHS; regularly posted photos of firearms, controlled substances, and himself; offered drugs for sale; lived in Albuquerque, New Mexico; and claimed to have "hit a lick" or "be hitting licks."[6] The CHS did not know the true identity of "Yunng_Finesse," but was able to share photos and videos posted by "Yunng_Finesse" with the FBI.

15. Based on the information provided by the CHS, the matter was referred to the VCTF for further investigation. Shortly thereafter, investigators determined the person utilizing the Snapchat account "Yunng_Finesse," to be NATHANIEL LEE VALENZUELA (hereinafter VALENZUELA). VALENZUELA is a 17-year old Albuquerque, New Mexico, resident and currently wanted on Bernalillo County, New Mexico, felony arrest warrants for aggravated assault with a deadly weapon and false imprisonment.[7] Law Enforcement records indicate VALENZUELA has a history of firearms possession and may be affiliated with the Albuquerque Westside Locos street gang. The specific facts linking VALENZUELA to the "Yunng_Finesse," Snapchat account are as follows:

   a. The CHS, at the direction of your affiant, set up a controlled purchase of fentanyl from "Yunng_Finesse" via Snapchat. The controlled buy took place at the Subject Premises and surveillance agents observed VALENZUELA to be the person who met with the CHS and sold the CHS several fentanyl tablets. Refer to paragraphs 19-23 for additional details pertaining to the controlled buy.

---

purchasing heroin and actually don't know that they are purchasing fentanyl – which often results in overdose deaths. Clandestinely-produced fentanyl is primarily manufactured in Mexico. Fentanyl is a Schedule II narcotic under the United States Controlled Substances Act of 1970. Source: https://www.dea.gov/factsheets/fentanyl

[6] "Hitting a lick" or "hitting licks" means to commit a robbery or robberies.

[7] Bernalillo County felony arrest warrant numbers: D202JR201900017 aggravated assault with a deadly weapon and D202JR201900018 false imprisonment, both issued in April 2019.

b.  The CHS identified VALENZUELA by photograph as the person the CHS purchased the fentanyl from.

c.  VALENZUELA was observed entering the Subject Premises after the aforementioned controlled buy and the address is linked to VALENZUELA's sister.

d.  VALENZUELA posted several selfies on Snapchat under the account "Yunng_Finesse." Those photos were compared to VALENZUELA's New Mexico driver's license photo and other social media photos and determined to analogous.

e.  During a related case coordination meeting with criminal investigators at the Second Judicial District Attorney's Office, I learned Special Agents with the District Attorney's Office had been investigating VALENZUELA and identified several of his social media accounts, to include his Snapchat "Yunng_Finesse" account.

### Guns, Drugs and Money

16. I observed several of VALENZUELA's Snapchat posts, which are referred to as "snaps," and noted VALENZUELA advertised "light blues" or "M30s" for sale for $15 per pill, or tablet. Some of VALENZUELA's posts contained photos and videos of hundreds of the light blue colored pills, bulk U.S. currency, and numerous firearms, most of which were Glock or AR-15 pistols with high-capacity magazines. Some photos and a video contained both drugs and firearms together. I have attached several of VALENZUELA's Snapchat photos in **Exhibit 1** and a Snapchat video in **Exhibit 2**, both of which have been attached hereto and referenced herein.

17. I am aware the terms "light blues" and "M30s" refer to counterfeit oxycodone pills containing fentanyl, which are small blue tablets stamped "M30" that closely match the color and markings of prescription oxycodone. The pills are also referred to as "Mexican oxy." I have arrested several persons for distribution and/or possession with intent to distribute these

specific pills in recent months and believe they are becoming increasingly popular in Albuquerque, New Mexico.

18. As I previously mentioned, VALENZUELA is a juvenile. Due to a recent escalation in violent crimes being committed by youthful offenders in Albuquerque, New Mexico,[8] the VCTF dedicated investigative resources to identifying and investigating some of the more prolific and violent juvenile offenders. VCTF investigations of youthful violent offenders are closely coordinated with the United States Attorney's Office for the District of New Mexico and the Second Judicial District Attorney's Office.

## The Controlled Drug Buy

19. In order to verify VALENZUELA was actually selling fentanyl, I utilized the CHS to make a controlled purchase of several fentanyl tablets from VALENZUELA. The buy took place on or about May 24, 2019, and occurred at the Subject Premises. Prior to the buy taking place, the CHS contacted VALENZUELA via Snapchat and requested to purchase a specific quantity of "fentanyl pills" for an agreed upon price. Based on my training and experience purchasing this particular controlled substance, I noted the price to be consistent with similar sales, for similar amounts of fentanyl, in this region. In Snapchat communications, VALENZUELA described the fentanyl tablets as "light blues" and "M30s." VALENZUELA requested the CHS meet him at the Subject Premises to conduct the deal.

---

[8] Increase in violent teenage offenders in Albuquerque (a sample of local media reports):
https://www.kob.com/albuquerque-news/violent-teen-crime-on-the-rise-in-albuquerque/5329083/
https://www.abqjournal.com/881588/violent-teen-group-suspected-in-recent-crimes-police-say.html
https://www.koat.com/article/police-name-suspected-juvenile-gang-members/8125754
https://www.koat.com/article/apd-juvenile-gangs-growing-more-violent/7666997
https://www.koat.com/article/police-say-albuquerque-teens-connected-to-three-shootings/19886749
https://www.abqjournal.com/1205172/youth-and-guns-a-deadly-mix.html
https://www.abqjournal.com/1321616/apd-makes-several-arrests-in-crackdown-on-gun-violence.html

9

20. Prior to the controlled buy, I and another agent searched the CHS and CHS's vehicle for contraband with negative results. I provided the CHS with an amount of government funds to be utilized in the controlled buy. Surveillance was maintained on the CHS, as the CHS drove to the Subject Premises.

21. Prior to the arrival of the CHS, VCTF agents observed VALENZUELA exit the Subject Premises and remain outside, in front of the residence. Once the CHS arrived, VALENZUELA approached the CHS and provided the CHS with a small plastic wrapping that contained several light blue colored fentanyl tablets. The CHS then provided VALENZUELA with the agreed upon funding, which VALENZUELA counted aloud. The CHS wore a "live wire" during the controlled buy, which enabled VCTF personnel to monitor the buy. After VALENZUELA counted the money, he advised the CHS to contact him when he needed additional "M30s." VALENZUELA indicated he always had the "little blue pills" and could get as many as 5,000 of them. The CHS departed the location shortly thereafter.

22. Surveillance agents observed VALENZUELA enter the Subject Premises and remain there for the duration of the surveillance.

23. Meanwhile, I and another agent followed the CHS to a predetermined location and recovered the drug evidence from the CHS. The CHS and CHS's vehicle were searched for contraband with negative results. The quantity of "M30" pills were subsequently entered into evidence and sent to the New Mexico Department of Public Safety Southern Laboratory in Las Cruces, New Mexico, for testing.

24. <u>Laboratory testing of the Fentanyl</u>: On June 3, 2019, I received the examination results from the laboratory and learned random samplings of the suspected fentanyl tablets were analyzed and fentanyl was identified in each examined tablet.

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

**The Pending Controlled Buy**

25. The CHS is scheduled to purchase several additional fentanyl tablets from VALENZUELA during the week of June 3, 2019. The deal was set up between VALENZUELA and the CHS during a series of Snapchat communications. VALENZUELA indicated he had a large supply of "M30 light blues" and the CHS could come to the Subject Premises whenever the CHS had money.

**The Subject Premises**

26. The Subject Premises is located at 2221 Don Felipe Road SW, Albuquerque, New Mexico and may be described as a single story residence with tan siding and greenish-blue trim. The numbers 2221 are posted on the mailbox in front of the residence. Color photographs of the location have been included in Attachment A. The search of the Subject Premises shall include the entire residence and all outbuildings, trash cans, storage containers, and vehicles parked at, or in front of, the Subject Premises.[9] FBI Special Agents will search the Subject Premises for the evidence items described in Attachment B, which has been attached hereto and incorporated herein by reference.

---

[9] Only vehicles parked at the Subject Premises or in front of the premises and having an apparent connection to the Subject Premises will be searched. Connection to the Subject Premises may be established by way of prior law enforcement observation, vehicle registration, subject admission or possession of an ignition key.

## CONCLUSION

27. Based on the aforementioned information and investigation, I submit probable cause exists to search the Subject Premises, as more particularly described in Attachment A, for evidence of violations of 18 U.S.C. §§ 922(x)(2), 924(c), 21 U.S.C. §§ 841(a)(1), 843(b), and 846, as more particularly described in Attachment B. This affidavit has been reviewed by Supervisory Assistant United States Attorney Jack Burkhead of the District of New Mexico.

Respectfully submitted,

Bryan Acee
Special Agent
Federal Bureau of Investigation

SUBSCRIBED TO AND SWORN BEFORE ME ON JUNE 3, 2019.

THE HONORABLE LAURA FASHING
UNITED STATES MAGISTRATE JUDGE
DISTRCT OF NEW MEXICO

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
# Exhibit 1
Subject Photos

| Photo 1 | Photo 2 | Photo 3 |
|---|---|---|
|  | |  |
| Selfie of Snapchat user "yunng_finesse," May 2019. | Undated 2019 Instagram photo of Valenzuela. Necklace similar to the one depicted in the Snapchat photo to the left. | New Mexico driver's license photo of Valenzuela, January 2019. |

| Photo 4 | Photo 5 | Photo 6 |
|---|---|---|
|  |  |  |
| More than 2-dozen bags of suspected fentanyl tablets, known as "light blues," "M-30s," or "Mexican Oxy." Also pictured is a Glock pistol with 50-100 round drum magazine. Posted by Snapchat user "yunng_finesse" in May 2019. | More suspected fentanyl tablets. Posted by Snapchat user "yunng_finesse" in May 2019. | Post by Snapchat user "yunng_finesse" advertising he has drugs for sale and can supply smaller dealers in May 2019. |

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
# Exhibit 1
## Subject Photos

| Photo 7 | Photo 8 | Photo 9 |
|---|---|---|
|  |  |  |
| Photo of two firearms with high-capacity magazines with the post "Not for sale just cause I hear shit thru tha wind." Posted by Snapchat user "yunng_finesse" in May 2019. | Photo of a Glock pistol on the Subject's lap. Posted by Snapchat user "yunng_finesse" in May 2019. | Photo of a AR-15 pistol inside a vehicle with the post "Right hand Always (strong emoji)." Posted by Snapchat user "yunng_finesse" in May 2019. |

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
# Exhibit 2
### Snapchat Video posted by Snapchat user "yunng_finesse" in May 2019

One compact disc (attached) depicting Snapchat video posted by "yunng_finesse" depicting two AR-15 pistols with 100-round drum magazines, ammunition, bulk U.S. currency, and several suspected fentanyl tablets, known as "light blues," "M-30s," or "Mexican Oxy."

# ATTACHMENT A
## Premises to be Searched

The Subject Premises is located at **2221 Don Felipe Road SW, Albuquerque, New Mexico**, and may be described as a single story residence with tan siding and greenish-blue trim. The numbers 2221 are posted on the mailbox in front of the residence. Color photographs of the location are depicted below. The search of the Subject Premises shall include the entire residence and all outbuildings, trash cans, storage containers, and vehicles[1] parked at, or in front of, the Subject Premises.





VALENZUELA on the phone in front of the Subject Premises.



VALENZUELA entering the Subject Premises.

---

[1] Only vehicles parked at the Subject Premises or in front of the premises and having an apparent connection to the Subject Premises will be searched. Connection to the Subject Premises may be established by way of prior law enforcement observation, vehicle registration, subject admission or possession of an ignition key.

Attachment A

# ATTACHMENT B
## Items to be Seized

All evidence of violations of 18 U.S.C. § 922(x)(2) Being a Juvenile in Possession of a Handgun, 18 U.S.C. § 924(c) Use of a Firearm in Furtherance of a Drug Trafficking Crime, 21 U.S.C. § 841(a)(1) Possession of Fentanyl with Intent to Distribute, 21 U.S.C. § 843(b) Use of a Communication Facility to Facilitate a Drug Crime, and 21 U.S.C. § 846 Conspiracy to Distribute Fentanyl, to include the following items:

1) Controlled substances, including fentanyl; drug paraphernalia, scales, plastic bags, and other packaging materials.

2) Evidence of drug trafficking: to include books, records, receipts, notes, ledgers, money order receipts, money orders, money remittance receipts, pre-paid money cards such as MoneyPak, Green Dot, Wal-Mart, or other debit cards, bulk United States currency and other documents relating to transporting, ordering, purchasing, manufacturing, or distribution of drugs.

3) Proceeds of drug trafficking: including currency, jewelry, and other assets or financial records related thereto.

4) Firearms, ammunition, magazines, holsters, and items used to store firearms.

5) Cellular telephones and other digital devices, such as computers, laptops, tablets, PDAs or similar electronic storage devices.

6) Articles of property tending to establish the identity of persons in control of premises, vehicles, storage areas, and containers being searched, including utility company receipts, rent receipts, addressed envelopes, and keys.

7) Safes, combinations or key-lock strong boxes or other secure storage containers, suitcases, locked cabinets and types of locked or closed containers, and hidden compartments that may contain any of the foregoing.